UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northern Plains Dairy, LLP,                              Civil No. 04-4922 (DWF/AJB)

               Plaintiff,

v.                                                                         **MEMORANDUM
                                                                           OPINION AND ORDER**

United States Department
of Agriculture; Farm Service Agency;
and Nicollet County Farm Service
Agency,

               Defendants.

___

Gary W. Koch, Esq., Gislason & Hunter – New Ulm, counsel for Plaintiff.

Joan D. Humes, Assistant United States Attorney, United States Attorney's Office, counsel for Defendants.

___

## Introduction

The above-entitled matter came before the undersigned United States District Judge on September 7, 2005, pursuant to a Motion for Summary Judgment brought by Plaintiff Northern Plains Dairy, LLP ("NPD") and a Motion to Affirm brought by Defendants United States Department of Agriculture ("USDA"), Farm Service Agency ("FSA"), and Nicollet County Farm Service Agency ("Nicollet County FSA") (collectively, the "Government Defendants").  In its Petition for Judicial Review of a National Appeals Division Director Review Determination, NPD asks this Court to set aside the final determination of the USDA's National Appeals Division ("NAD") insofar as the NAD concluded that NPD improperly received milk support payments under the Milk Income Loss Contract ("MILC") Program promulgated by the Farm

Security and Rural Investment Act of 2002. For the reasons set forth below, NPD's motion is denied; the Government Defendants' motion is granted.

## Background

**I.     The MILC Program**

The MILC program provides economic subsidies to dairy producers for market losses sustained when milk prices fall below a certain determined level. Dairy producers or operations that enter into a contract with the USDA may receive payment benefits under the MILC program if they meet certain requirements under the Act and the regulations promulgated pursuant to the Act. 7 U.S.C. § 7982(b); 7 C.F.R. §§ 1430.200-1430.225. Dairy producers are required to submit applications for MILC program payments to the FSA office serving the county where the dairy operation is located. 7 C.F.R. § 1430.204(a).

Each "separate and distinct operation" is eligible to receive MILC payments for up to 2.4 million pounds of milk for each fiscal year. 7 C.F.R. § 1430.207(b). The regulations further provide that the Deputy Administrator of the FSA "shall determine what is a separate and distinct operation and that decision shall be final." *Id.*

The regulations also permit a dairy operation that receives MILC benefits to reorganize or restructure. 7 C.F.R. § 1430.213(a). However, such reorganization or restructuring is "subject to a review by FSA to determine if the operation was reorganized for the sole purpose of receiving multiple payments." *Id.* If a change to the dairy operation occurs during a contract period, the modification to the MILC contract does not take effect until the next fiscal year. 7 C.F.R. § 1430.213(c). Such changes include, but are not limited to, "any producer affiliated with a dairy operation" that has an approved MILC contract and forms a new dairy operation. *Id.*

**II.     NPD**

NPD is a dairy operation in St. Peter, Minnesota, that is owned and operated by Mark Davis, Davis Family Dairies LLC ("Davis Family Dairies"), and Dave Mogenson. NPD was originally organized in 1997 as a general partnership, and it became a Minnesota limited liability partnership on September 16, 2002.

NPD entered into a MILC contract at the Nicollet County FSA office on August 4, 2003. The Nicollet County FSA issued a MILC payment for $42,646.56 for fiscal year 2003 ("FY2003"). After the FY2003 MILC payment was issued, the Nicollet County FSA became aware that two owners of NPD were also owners of three other dairy operations—Davis Family Dairies, M & J Dairy, and Double J Dairy—that had already received MILC payments for FY2003 in other Minnesota counties. (Admin. Record ("AR") at 37.) These three dairies were no longer in operation and had sold all of their milking cows to NPD when they ceased operating. In addition, two of these dairies, M & J Dairy and Double J Dairy, had already reached their 2.4 million pound payment cap for FY2003 and thus were not eligible for additional MILC payments. The Nicollet County FSA determined that NPD was affiliated with dairies that had already received FY2003 MILC payments and, as a result, NPD was ineligible to receive FY2003 MILC payments.

On November 13, 2003, the Nicollet County FSA notified NPD that NPD owed a refund for the FY2003 MILC payments that NPD had received. (*Id.* at 38.) The demand letter stated:

> According to the appendix to form CCC-580, Milk Income Loss Contract section 18, "A dairy operation entering into a Milk Income Loss Contract shall not after December 1, 2001, reorganize the dairy operation for the sole purpose of receiving more than one payment." Notice LD-529 paragraph B states "An eligible new dairy operation as any dairy operation purchased by a producer not affiliated with any dairy operation with an approved MILC with CCC. Davis Family Dairies, LLC, Double J Dairy, LLP, and M & J Dairy, LLP are all affiliated with Mark Davis.

3

(*Id.*)

In December 2003, NPD appealed the Nicollet County FSA's decision to the County FSA Committee. (AR at 39.) NPD asserted that it was a newly organized entity that was entitled to participate in the MILC program. (*Id.* at 40.) The County FSA Committee held a hearing and concluded that NPD was owned and operated by Mark Davis, who was affiliated with M & J Dairy, Double J Dairy, and Davis Family Dairies. Thus, the County FSA Committee determined that Mark Davis' ownership in NPD rendered NPD ineligible for FY2003 MILC Payments.

In February 2004, NPD appealed the County FSA Committee's determination to the State FSA Committee. The State Committee reviewed the case file and hearing testimony and denied the appeal. (AR at 54.)

In May 2004, NPD appealed the State FSA Committee's determination to the NAD. In this appeal, NPD set forth for the first time an argument that the "finality rule" prohibited FSA from requiring a payment refund.[1] The NAD held a hearing on the matter on June 22, 2004. (*Id.* at 272-327.) In a written report dated July 7, 2004, the NAD denied NPD's appeal. (*Id*. at 88-92.) The NAD Hearing Officer determined that two of the partners in NPD, Mark Davis and Davis Family Dairies, "also owned three separate predecessor dairies that received FY 2003 MILC payments" and because of these ownership affiliations, NPD was not eligible for a FY2003 MILC payment. (*Id*. at 91 (citing 7 C.F.R. § 1430.213(c)).) The NAD Hearing Officer also concluded that NPD "had reason to know the MILC payment was erroneous" and thus the

---

[1] Pursuant to the administrative appeal regulations for the USDA, a determination by the state or county FSA becomes final and binding 90 days from the date the application for benefits has been filed. 7 C.F.R. § 718.306(a). One of several exceptions to this "finality rule" is when "the participant had reason to know that the determination was erroneous." *Id.*

finality rule did not apply. (AR at 92.) The Hearing Officer found that the Nicollet County FSA was "unable to accurately analyze" NPD's request for MILC payments in August 2003 because NPD "failed to report their predecessor dairy reorganizations" in NPD's FY2003 MILC contract application.

In August 2004, NPD sought the NAD Director's review of the Hearing Officer's determination. (AR at 175.) NPD asserted that there was no basis for the FSA's refund request and that the finality rule precluded the FSA from requesting a refund because NPD had no reason to know that the payment was erroneously made. In a Director Review Determination dated October 1, 2004, the Director affirmed the Hearing Officer's determination. (*Id.* at 155-60.) The Director determined that the case record supported FSA's decision that NPD's affiliation with other dairy operations that had already received FY2003 MILC payments precluded NPD from receiving FY2003 MILC payments. (*Id.* at 158-60.) In addition, the Director concluded that the finality rule did not bar the FSA from demanding a refund of the MILC payment that NPD received. Specifically, the Director stated that NPD "should have known" that it was ineligible to receive MILC payments for FY2003. (*Id.* at 159.) Finally, the Director determined that the evidence in the case record supported FSA's determination that NPD was affiliated with the other dairy operations. (*Id.*)

The Director Review Determination was a final determination by the USDA, and NPD sought this Court's review of the decision by filing its Petition for Judicial Review of a National Appeals Division Director Review Determination on December 2, 2004. In its Petition, NPD asserts that the NAD's decision to deny MILC payments to NPD for FY2003 was arbitrary and capricious.

**Discussion**

I.  **Standard of Review**

The Administrative Procedure Act ("APA") governs judicial review of an action taken by an administrative agency. 5 U.S.C. § 701-706 (2005). Under the APA, the Court may set aside an agency's action if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; or if the action is "unsupported by substantial evidence." 5 U.S.C. § 706. Although the Court reviews an agency's legal determinations *de novo*, the Court must afford substantial deference to an agency's interpretation of its own rules and the laws it is charged to implement. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984); *Vue v. I.N.S.*, 92 F.3d 696, 699 (8th Cir.1996). An agency's implementation of a statute entrusted to it or interpretation of the agency's own regulation will be rejected by the Court only if it is clearly contrary to express legislative intent or if it is arbitrary and capricious. *Id.*

II. **NPD's Affiliation with Other Dairy Operations**

NPD asserts that this Court should set aside NAD's determination to deny NPD's FY2003 MILC payments. NAD's denial of NPD's FY2003 MILC payments was based on the conclusion that NPD was affiliated with other dairy operations that had already exhausted the FY2003 MILC payment limitations. There is no dispute that there was common ownership among NPD, Davis Family Dairies, M & J Dairy, and Double J Dairy. Moreover, there is no dispute that M & J Dairy and Double J Dairy had already reached their 2.4 million pound payment cap for FY2003 MILC payments and as a result, these two dairies were not eligible for additional MILC payments. The FSA concluded that NPD was affiliated with Davis Family Dairies, M & J Dairy, and Double J Dairy as a result of the common ownership, and thus that

NPD was ineligible for FY2003 MILC payments. Neither the statute nor the regulations implementing the statute define the term "affiliated" as it is used in 7 C.F.R. § 1430.213(c).

The Court finds that NAD's decision was a reasonable interpretation of the statute and implementing regulations and thus is entitled to deference. *Chevron*, 467 U.S. at 842. NAD rejected NPD's repeated arguments that the four dairies in question were independent operations with separate financing and separate employees. NAD determined that, based on the undisputed common ownership among NPD and the other dairies, and the undisputed fact that two of these dairies had already reached their MILC payment limitation for FY2003, MILC payments to NPD were inappropriate. NAD's determination that the common ownership among the dairies constituted an affiliation was a permissible construction, especially considering the fact that the three predecessor dairies had ceased operation and sold their dairy cattle to NPD. Moreover, the NAD acted reasonably in seeking to avoid paying duplicate payments to dairy operations that were affiliated with other dairy operations that had met their payment limitations. Thus, the NAD's conclusion to deny NPD the FY2003 MILC payments based on NPD's affiliation with the other dairies was within the bounds of the statute and regulations implementing the MILC program, and the determination was not arbitrary or capricious.

### III.   The Finality Rule

NPD applied for MILC program benefits on August 4, 2003. The Nicollet County FSA demanded repayment on November 13, 2003. NPD asserts that because the Nicollet County FSA's decision was outside of the 90-day "finality rule" deadline set forth in 7 C.F.R. § 718.306(a), FSA is prohibited from demanding a refund of the FY2003 MILC payment.

As noted above, pursuant to the administrative appeal regulations for the USDA, a determination by the state or county FSA becomes final and binding 90 days from the date an

application for benefits has been filed.  7 C.F.R. § 718.306(a).  One of several exceptions to this "finality rule" is when "the participant had reason to know that the determination was erroneous."  7 C.F.R. § 718.306(a)(4).

The Court finds that the NAD's interpretation of the finality rule was consistent with the regulatory framework of the MILC program.  The FSA demanded the MILC payment refund from NPD once it became aware of the common ownership and affiliation among the dairies, two of which had reached the payment cap on FY2003 MILC payments.  By all accounts, NPD had not provided this information to FSA at the time of its FY2003 application, although this information potentially could (and ultimately did) affect their MILC application.  As a result, NAD's determination that NPD fell within the regulatory exception to the finality rule was reasonable and consistent with the regulations.

Moreover, the Court rejects NPD's attempt to impose a burden on the Government Defendants to determine when a producer has made a change that would potentially affect their MILC contract.  The language of the MILC contracts does not support this contention.  Specifically, the MILC contracts state:

> Producers in dairy operations are required to notify their local FSA Office immediately of any changes that potentially affect the terms, conditions, or participants under the Milk Income Loss Contract.  Changes include, but are not limited to changes to the starting month to receive payment for the next fiscal year, death of producer on the contract, new member joining the operation, member exiting the operation, transfer of shares by sale or other transfer action, or reconstitutions.

(AR at 143.)  It is undisputed that none of the predecessor dairies notified the FSA that they had ceased operation.  There is no statutory or regulatory support for the proposition that the FSA had a duty to investigate the common ownership of dairies participating in the MILC program.  In this regard, NPD's argument fails.

**IV.    Notice and Comment**

Finally, NPD asserts that the NAD's decision was erroneous because the NAD attempted to establish an anti-affiliation rule that was not subject to public notice and comment. However, 7 U.S.C. § 7991(c) provides that the regulations implementing the MILC program "shall be made without regard to . . . the notice and comment provisions of [the APA]." 7 U.S.C. § 7991(c)(2)(C). Thus, NPD's argument is without merit.

**Conclusion**

The Court has determined that NAD's final decision to deny FY2003 MILC program benefits to NPD was not arbitrary or capricious. In so holding, the Court notes that at no time has the Nicollet County FSA, the FSA, or the USDA made any determination of malfeasance or fraud on the part of NPD. The NAD's determination was merely one of eligibility or non-eligibility for a government benefit program. Maybe the FSA could have discovered, prior to paying FY2003 MILC benefits, that the common ownership precluded NPD's eligibility; maybe NPD could have made an inquiry into its eligibility at the time of application. In the end, however, rather broad discretion is granted to the USDA to determine eligibility for the MILC program by the statute and its implementing regulations. The NAD acted within the bounds of its statutory and regulatory discretion when it determined that NPD was not eligible for FY2003 MILC program benefits because of NPD's common ownership with other dairies that had already exhausted their FY2003 benefits.

For the reasons stated, **IT IS HEREBY ORDERED THAT**:

1.   Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**; and

9

  2.  The Government Defendants' Motion to Affirm (Doc. No. 13) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 25, 2005    s/Donovan W. Frank
                DONOVAN W. FRANK
                Judge of United States District Court